UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

German Patricio Mizhirumbay,[1]
Petitioner

v. Case No. 26-cv-725-SM-AJ

David Wesling, Acting Director,
Boston Field Office, U.S. Immigration
and Customs Enforcement, et al.,
Respondents

**O R D E R**

German Patricio Mizhirumbay is a civil immigration detainee from Ecuador. He is not subject to a final order of removal and his custody is governed by 8 U.S.C. § 1226(a). In his original habeas corpus petition, he sought an order directing the federal respondents to provide him with a prompt, constitutionally adequate bond hearing before a neutral decisionmaker. See generally 28 U.S.C. § 2241. On September 21, 2026, petitioner was afforded a bond hearing at which an immigration judge concluded that the government proved that petitioner is a flight risk. Bond was denied.

[1] Although the court's docket spells petitioner's name slightly differently, he says (and immigration documents verify) that his name is spelled "Mizhirumbay."

Petitioner then filed an Amended Petition for Habeas Corpus Relief (document no. 10) in which he alleges that the bond hearing afforded to him was constitutionally deficient. He seeks an order compelling respondents to release him immediately or, in the alternative, requiring them to provide him with a constitutionally adequate bond hearing before a new immigration judge. For the reasons discussed, that Amended Petition is granted to the extent petitioner seeks a new bond hearing before a different immigration judge.

**Background**

I. Petitioner's Immigration History.

According to the Amended Petition and DHS's Form I-213 (document no. 10-3), in May of 2005, U.S. Border Patrol encountered Petitioner and served him with a Notice to Appear. Petitioner was sixteen years old at the time. On June 15, 2005, an immigration judge granted him voluntary departure, and he left the United States the following month.

Petitioner returned to the United States on an unknown date - likely in or around 2009. See Original Petition (document no. 1) at para. 4. On October 21, 2011, ICE's Enforcement and Removal Operations (ERO) encountered him in Framingham, Massachusetts, and served him with a Form I-862 Notice to

Appear, placing him in removal proceedings under 8 U.S.C. § 1229a. The following month, on November 17, 2011, an immigration judge in Boston granted petitioner bond and he was released from custody. Roughly four years later, on December 31, 2015, an immigration judge administratively closed petitioner's removal proceedings. Those proceedings remained closed until July of 2025, when DHS's Office of the Principal Legal Advisor moved to recalendar the case. ERO arrested and detained petitioner on August 31, 2026.

From his release on bond in November of 2011 until his arrest on August 31, 2026, petitioner remained in the United States, in the same community, while his removal proceedings were pending. The record reflects no failure to appear, no in absentia order of removal, no breach of bond, and no attempt to abscond. Petitioner is married and has two children: a nineteen year-old daughter and fourteen year-old son who has special needs and attends public school in Framingham, Massachusetts. Both children are U.S. citizens. Petitioner is the financial provider for his family and has been a resident of Framingham for more than fifteen years, where he has established deep connections with the community and his church.

II. The Bond Hearing.

At petitioner's September 21, 2026, bond hearing, the IJ admitted four exhibits into evidence, heard argument from both the government and counsel for petitioner, and then rendered his oral decision. The hearing to determine whether petitioner should remain in custody or be released on bond was brief, lasting approximately eight minutes. For its part, the government's argument in favor of detention:

> focused on the evidence that Petitioner was a flight risk, which included the fact that Petitioner had previously been granted voluntary departure in 2005, but reentered the United States without authorization on an unknown date and at an unknown place and was placed back in immigration proceedings in 2011, which are pending. DHS also argued that Petitioner lacks regard for the laws of the United States based on his five convictions for driving without a license in the last ten years and failure to file applications with the Immigration Court or United States Citizenship and Immigration Services ("USCIS") to seek relief in his immigration proceedings.

Government's Objection to Amended Petition (document no. 12) at 3 (emphasis supplied). See also Exhibit 2 to Government's Objection to Amended Petition, Audio Recording of Bond Hearing (document no. 12-2) (filed conventionally), at 2:36-3:38.[2]

---

[2] Parenthetically and with respect to petitioner's driving without a valid license, the court notes that subject to limited exceptions, New Hampshire neither issues driver's licenses to undocumented immigrants, nor does it recognize as valid such licenses issued by other states. See, e.g., N.H. Rev. Stat. Ann. 263:1 IV (licenses issued by another state to undocumented

In his oral decision denying petitioner's request for release on bond, the IJ stated:

> All right. The Court is prepared to make its decision. Here, after carefully considering the documentary and oral arguments raised by both parties, the Court finds that DHS has not met its burden of establishing by clear and convincing evidence that the respondent is a danger to the community.
>
> However, after balancing the equities and considering the following factors, fixed address in the United States, length of residence, family ties, employment history, immigration record, attempts to escape, failures to appear, criminal record, the Court balances the positives and the negatives. One of the concerns is flight. And after reviewing all the evidence and balancing those equities, this Court finds that DHS has met its burden by a preponderance of the evidence with regard to flight. There are no alternatives to detention. So the Court is making the finding that no bond amount is appropriate due to flight under that standard that the Court just provided, preponderance of the evidence.

Audio Recording of Bond Hearing at 6:55-8:05. In his written decision, the IJ added some specificity to the largely boilerplate oral recitation of the "Guerra factors." See In Re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), abrogated by Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021). Specifically, the IJ wrote:

---

immigrants are invalid in New Hampshire). See also N.H. Division of Motor Vehicles, Non-Citizen License in N.H. (available at: https://www.dmv.nh.gov/drivers-licensenon-driver-ids/non-us-citizen).

> The Court finds that the Respondent presents a significant risk of flight. Of particular concern, the Respondent entered the United States in 2011[3] and he has five criminal motor vehicle infractions. That conduct weighs substantially against the Respondent because it undermines the Court's confidence in and his willingness to comply with immigration authorities and future court proceedings.
>
> Considering this conduct together with the other relevant Guerra factors and the record as a whole, the Court finds that the Respondent presents a risk of flight sufficient to warrant continued detention. Accordingly, the request for release on bond is denied.

Order of the Immigration Judge (document no. 10-1).

Prior to the hearing and in support of his request for bond, petitioner submitted to the IJ a 110-page packet of materials that included a letter from his U.S. sponsor who agreed to "personally support him in meeting the obligations required by this Court [and] help him keep track of his court dates and appointments, remind him of upcoming hearings, and assist him with transportation when necessary so that he can appear as required." Support Letter for Bond Hearing (document no. 10-4) at 16. That package also included twenty-four letters from friends, family, and co-workers attesting to petitioner's

---

[3] That statement is not entirely accurate. As noted above, petitioner reentered the U.S. on an unknown date - likely in or around 2009. See Original Petition at para. 4. The date in October of 2011 is when he was encountered by ERO.

good character, his responsibility, his ties to the community, and each person's strong conviction that petitioner would attend all scheduled immigration hearings. Finally, it included information on petitioner's dependent son's special needs and his IEP.

But, says petitioner, the IJ failed to consider that evidence - at least it was not mentioned in either the IJ's oral or written decision. Moreover, says petitioner, the IJ failed to meaningfully consider whether there were any alternatives to detention that would ensure his appearance at immigration proceedings. Specifically, he argues that:

> DHS did not argue that Petitioner is dangerous, and the Immigration Judge found that DHS had not met its burden on dangerousness. The Immigration Judge nevertheless denied bond as a flight risk, resting on the assertion that Petitioner "entered the United States in 2011" and that "he has five criminal motor vehicle infractions." The first is not what the record shows. The second consists of five New Hampshire convictions for operating without a valid license, the most recent in January 2024, none of which resulted in incarceration. Neither says anything about whether Petitioner will appear for his immigration hearings.
>
> The Immigration Judge also did not engage with Petitioner's evidentiary submission, including the sworn letter of his United States citizen sponsor, more than twenty letters of support, the birth certificates of his two United States citizen children, and his son's IEP records. The IJ disposed of alternatives to detention in a single sentence: "There are no alternatives to detention."

> That hearing did not satisfy the Fifth Amendment. The government bears the burden of proving flight risk by a preponderance of the evidence, the Immigration Judge must meaningfully engage with the noncitizen's evidence, and the Immigration Judge must consider alternatives to detention.

Amended Petition at paras. 4-6.[4]

**Discussion**

I. Exhaustion and Jurisdiction.

This court has previously discussed - at length - the scope of its jurisdiction under 28 U.S.C. § 2241, why the provisions of 8 U.S.C. § 1226(e) do not deprive it of jurisdiction to entertain petitioner's challenge to the constitutional sufficiency of his bond hearing, and why petitioner need not, under the circumstances presented, exhaust available administrative remedies (by, for example, appealing the denial of bond to the Board of Immigration Appeals). See, e.g., Macedo v. Wesling, No. 1:26-CV-36-JL-TSM, 2026 WL 1413156 (D.N.H. May 20, 2026); Makuraza v. Wesling, No. 1:26-CV-122-JL-AJ, 2026 WL 1068066 (D.N.H. Apr. 20, 2026); Mayancela Mayancela v. FCI

[4] Petitioner also asserts that, "DHS offered no evidence that Petitioner had ever failed to appear for any hearing, and did not address alternatives to detention." Amended Petition at para. 37.

Berlin, Warden, No. 25-CV-348-LM-TSM, 2025 WL 3215638 (D.N.H. Nov. 18, 2025).

Those discussions need not be repeated. It is sufficient to note that the court has jurisdiction over petitioner's challenge to his bond hearing. To prevail, petitioner must demonstrate that the "IJ failed to place the burden of proof on the Government to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. To make this showing, he can either point to the language of the IJ's opinion or demonstrate that the evidence itself could not – as a matter of law – have supported the IJ's decision to deny bond." Mayancela Mayancela, 2025 WL 3215638, at *5 (citations and internal punctuation omitted). See generally Gupta v. Brackett, No. 1:26-CV-207-PB-TSM, 2026 WL 1734839, at *2 (D.N.H. June 16, 2026) ("Although § 1226(e) strips the Court of the power to review an IJ's discretionary decision to detain a person subject to removal proceedings, it does not restrict the Court's authority to review claims that the person is being detained in violation of his constitutional rights. Nor does it bar judicial review of other questions of law that are embedded in a detention determination.") (citations omitted).

II. The Merits of Petitioner's Challenge.

As this court has previously observed, "[a]lthough the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires." Mayancela Mayancela, 2025 WL 3215638, at *5. More recently, the court noted that:

> To deny bond, DHS must prove . . . by a preponderance of the evidence that the respondent poses a flight risk. In making such a finding, the Immigration Judge generally must sufficiently explain his or her reasoning to permit appellate or judicial review of their decisions.
>
> While this does not require an Immigration Judge to discuss ad nauseam every piece of evidence, the Immigration Judge must give reasoned consideration to the evidence as a whole, make supportable findings, and adequately explain its reasoning.
>
> Thus, while the Immigration Judge need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record, it is obligated to offer more explanation when the record suggests strong arguments for the petitioner that DHS has not considered.

Mbiya v. Doe, No. 1:26-CV-00467-JL-TSM, 2026 WL 2098764, at *5 (D.N.H. July 21, 2026) (Laplante, J.) (emphasis supplied) (citing Rivera-Medrano v. Garland, 47 F.4th 29, 39 (1st Cir. 2022)).

Here, the record does not show that the IJ gave reasoned consideration to the materials petitioner submitted. Indeed,

there is no indication that he reviewed them at all. To be sure, during the hearing the IJ searched the record for evidence of petitioner's motor vehicle infractions, and he appears to have reviewed those records at that time. However, he gave no indication that he had read any of the materials in petitioner's evidentiary package prior to the hearing, nor does the recording of the hearing suggest that he read and considered those materials during the administrative hearing.

Specifically, there is no suggestion that the IJ considered the unrebutted letter from petitioner's sponsor, establishing the lengths to which he would go to insure petitioner's attendance at all hearings and related proceedings. Nor is there evidence the IJ considered petitioner's commitment to and financial obligations owed to his family and how that might substantially mitigated the risk of flight. Likewise, there is no evidence to support the conclusion that the IJ considered any of the more than 20 letters of support from friends and co-workers, attesting to petitioner's good character, his responsibility, his deep ties to the community, and each person's strong and unrebutted conviction that petitioner was not a flight risk and would attend all scheduled immigration hearings.

There is, in short, no basis in the record to conclude that the IJ considered petitioner's submissions in any meaningful or thoughtful way. While the IJ need not have discussed those materials in detail before issuing his decision, he was - at a minimum - obligated to acknowledge their existence and give some indication that he read, considered, and weighed them against the government's evidence in support of detention. See generally, Rivera-Medrano, 47 F.4th at 39. To do otherwise, renders the bond hearing little more than an idle theatrical exercise at which the outcome is, for all practical purposes, predetermined and continued detention is a forgone conclusion. Plainly, due process demands more.

## Conclusion

"Flight risk" is a fact that the government bears the burden of proving by a preponderance of the evidence, to a neutral and fair arbiter. It cannot be assumed and a decision concerning a petitioner's freedom must be based on a complete and accurate review of the evidence presented by both the government and the petitioner. If the IJ reviewed and gave thoughtful consideration to the materials petitioner submitted in support of his application for release on bond, and if the IJ fairly weighed that evidence as the Constitution requires, the record does not show it.

In light of the foregoing, and for the reasons set forth in petitioner's First Amended Petition for Writ of Habeas Corpus (document no. 10), the amended petition is granted, in part, as follows: The federal respondents are ordered to provide petitioner with a constitutionally adequate bond hearing before a different immigration judge as soon as practicable, at which the government will bear the burden to either: (1) prove by a preponderance that petitioner is a flight risk; or (2) prove by clear and convincing evidence that he poses a danger to the community. See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

If the government fails to provide such a bond hearing, the court will set appropriate terms and conditions of the petitioner's release during the pendency of his removal proceedings.

To the extent petitioner seeks an order directing his immediate release, that request is denied without prejudice. The court finds that a new, constitutionally adequate bond hearing before a different IJ is sufficient to protect his rights at this stage.

The government shall file a status report within fourteen days.

**SO ORDERED.**

______________________________
Steven J. McAuliffe
United States District Judge

October 26, 2026

cc: Counsel of Record